UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CAROLYN R. CHANEY, as CHAPTER | ) | |
| 7 TRUSTEE, for JOHN AND | ) | |
| ELIZABETH GILBERT, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 10-11491-JLT |
| | ) | |
| EASTERN SAVINGS BANK, FSB, | ) | |
| BETHPAGE ASSOCIATES, INC., | ) | |
| PAUL S. JENSEN, and ROBERT J. | ) | |
| SMITH, III, | ) | |
| Defendants. | | |

**MEMORANDUM OF EASTERN SAVINGS BANK FSB AND BETHPAGE
ASSOCIATES, INC. IN SUPPORT OF MOTION TO DISMISS**

### Introduction

Defendants Eastern Savings Bank fsb ("Eastern") and Eastern's operating subsidiary,

Bethpage Associates, Inc. ("Bethpage") ("Defendants") hereby move the Court, pursuant to Fed.

R. Civ. P. 12(b)(6), to dismiss the complaint filed by Carolyn R. Chaney (the "Plaintiff"), as

Chapter 7 Trustee, for John and Elizabeth Gilbert (the "Gilberts"), on the ground that the various

claims are preempted by regulations issued by the federal Office of Thrift Supervision ("OTS").

In addition, Count VI fails to state a valid claim under G.L. c.244.

### Summary of Claims

Plaintiff's claims against Defendants are based on a loan transaction entered into by the

Gilberts on or about August 3, 2006, pursuant to which the Gilberts executed a note in the

amount of $1.3 million and granted a mortgage on the property located at 12 Austin Farm Drive,

Nantucket, Massachusetts. Copies of the note and mortgage are attached hereto as Exhibits "A"

and "B."[1]

The Complaint asserts nine legal claims against Defendants, all of which are based in whole or in part on the terms of the note and mortgage and the actions taken by Eastern in connection with the closing of the loan transaction: Count I ("Violation(s) of G.L. c. 183C - the Predatory Home Loan Practices Act; 209 CMR 32.00; 209 CMR 32.32; 940 CMR 8.00"); Count II ("Violation(s) of G.L. c. 183, s. 28C; 290 CMR 53.00 - Refinance Loans Required to be in Borrower's Interest"); Count III ("Violation(s) of the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"); G.L. c. 140D"); Count IV ("Rescission; G.L. c. l40D, s. 10"); Count V ("Violation(s) of G.L. c. 93A; 940 CMR 8.00"); Count VI ("Violation(s) of G.L. c. 244"); Count VII (civil conspiracy); Count XIV (declaratory judgment); and Count XV (negligent infliction of emotional distress).

Four claims allege violations of Massachusetts consumer lending statutes and regulations: G.L. c.183C (Count I); G.L. c.183, § 28C (Count II); and G.L. c.140D, the Massachusetts Consumer Credit Cost Disclosure Act, or MCCCDA (Counts III and IV).

The remaining claims are based largely on alleged violations of the same statutes. For example, Count V (violation of G.L. c.93A) alleges that Eastern violated G.L. c.183C; G.L. c.183, §28C; and G.L. c.140D, as well as the Attorney General's regulations regarding residential mortgage loans, 940 CMR 8.00. Complaint, ¶197.  Count XIV (declaratory judgment) seeks a declaration that the Gilberts "properly rescinded the Eastern loan" (presumably pursuant to G.L. c.140D, §10) and that Eastern's loan is null and void (presumably due to violations of G.L. c.183C; G.L. c.183, §28C; and G.L. c.140D).  The claim for civil conspiracy (Count VII)

---

[1]   Although the complaint is 53 pages long and includes 20 exhibits, it does not state the date of the Eastern closing, nor does it refer to or attach the terms of the Eastern note and mortgage. Nonetheless, the Court may consider those documents in connection with this motion to dismiss. *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co*., 267 F.3d 30, 33-34 (1st Cir. 2001).

alleges that the foreclosure sale "was unlawful in that it was based on a loan that violated the various statutes enumerated in this Complaint." Complaint ¶202. The claim for negligent infliction of emotional distress (Count XV) alleges that the Defendants negotiated, offered, originated and provided the Gilberts with a "high cost home mortgage loan" that "dramatically increased their debt with unsustainable and unlawful terms and conditions that the Gilberts could not possibly have ever met." Complaint ¶227(a).

Count I alleges that the Eastern loan constitutes a "high-cost home mortgage loan" as defined by G.L. 183C, § 2 and 209 CMR 32, and that Eastern violated by G.L. 183C by: failing to receive certification, or provide a certificate of compliance that the Gilberts received counseling as to the advisability of the loan (¶164); by making a "high-cost home mortgage loan" with reckless disregard for the Gilberts' ability to repay the loan (¶166); charging closing costs in excess of 5% of the loan amount (¶168); and including a demand provision in the note (¶169). The Complaint alleges that the alleged violations of Chapter 183C make the loan "unenforceable as a matter of law" (¶165) and that Bethpage did not obtain valid title to the property at the foreclosure sale because the loan was unenforceable (¶172).

Count II alleges that Eastern violated G.L. c.183, §28C by making a refinance loan that was not in the "best interest" of the Gilberts (¶177) because the new monthly payment was $6,000 higher than the payment to the prior mortgagee (¶179a); the loan did not have a different amortization schedule (¶179b); the Gilberts did not receive cash in excess of the closing costs (¶179c); the interest rate was higher than the prior interest rate (¶179d); the loan was an adjustable rate loan, as was the prior loan (¶179e); and Eastern failed to conduct the analysis required by the statute (¶179g).

With respect to G.L. c.140D, Count III alleges that Eastern violated the statute by failing

to provide the required number of copies of the Notice of Right to Cancel (¶184a) and failing to provide an accurate "Truth in Lending Disclosure" (¶184b).  Count IV seeks rescission under G.L. c.140D, allegedly for the reasons set forth in a letter dated July 28, 2010, attached as Exhibit "S" to the Complaint, which letter refers to the same violations of G.L. c.183C, G.L. c.183, §28C, and G.L. c.140D asserted in Counts I, II and III of the Complaint.

## ARGUMENT

I.  **Because Eastern is a federally chartered savings bank, the Gilberts' state law claims are preempted by HOLA and OTS regulations.**

As a federally chartered savings bank, Eastern (and Bethpage as its operating subsidiary[2]) is subject to the provisions of the Home Owners Loan Act, 12 U.S.C. §§ 1461 *et seq* ("HOLA"), and regulations promulgated thereunder by OTS.  Because those regulations specifically preempt the state-law claims asserted by Plaintiff, the Complaint should be dismissed.

Federal laws and regulations preempt state laws when Congress explicitly so provides or creates a regulatory scheme "'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' also known as 'field preemption.'  In such cases, state regulation will be invalid even if it does not directly conflict with federal laws or regulations." *SPGGC, LLC v. Ayotte*, 488 F.3d 525, 530-31, 533 (1st Cir. 2007) (citations omitted); *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375 (1985) (state law impliedly preempted if Congress has occupied the relevant field, leaving no room for supplemental regulation).  Federal regulations are entitled to the same preemptive effect as federal statutes. *Id.*

In HOLA, Congress empowered the Federal Home Loan Bank Board (now the OTS), to create far-reaching regulations "to provide for the organization, incorporation, examination,

---

[2] As an operating subsidiary of Eastern, preemption applies equally to Bethpage.  See *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 15, 127 S.Ct. 1559, 1569 (2007).

operation, and regulation of associations to be known as Federal savings associations ... giving primary consideration of the best practices of thrift institutions in the United States." 12 U.S.C. § 1464(a)(1); *see also* 12 U.S.C. § 1463(a). "This is an extremely broad grant of power that provides ample authority for the Director's efforts to enforce consistent, nationwide regulations affecting lending practices, by preempting, *inter alia*, 'state laws purporting to impose requirements' " regarding terms of credit, loan-related fees, and disclosure obligations. *Flagg, supra*, 396 F.3d at 183; *see also Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 161 (1982) ("The broad language of [HOLA] expresses no limits on the [OTS' ]authority to regulate the lending practices of federal savings and loans. As one court put it, '[i]t would have been difficult for Congress to give the [OTS] a broader mandate'").

Accordingly, as the Supreme Court recognized, "Congress plainly envisioned that federal savings and loans would be governed by what the [OTS] - not any particular State -deemed to be the 'best practices.'  Thus, the statutory language suggests that Congress expressly contemplated, and approved, the [OTS]'s promulgation of regulations superseding state law." *Fidelity Fed.*, 458 U.S. at 161-62 (citations omitted).

Pursuant to its broad grant of power, OTS promulgated regulations governing "the powers and operations of every Federal savings and loan association from its cradle to its corporate grave." *Id*. at 145 *quoting California v. Coast Federal Savings and Loan Ass'n*, 98 F.Supp. 311, 316 (S.D. Cal. 1951).

OTS has expressly preempted the entire field of lending regulations applicable to federal savings associations. 12 C.F.R. § 560.2(a). OTS's promulgation of regulations is expressly intended to be "preemptive of any state law purporting to address the subject of the operations of a Federal savings association."  12 C.F.R. § 545.2.  Preemption extends to any state law that

impacts the lending activity of federal savings associations:

> Occupation of field. . . . To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities . . . . For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.

12 C.F.R. § 560.2(a).

OTS's intent to broadly preempt state laws affecting the lending activities of federal savings associations could not be clearer, and fully implements the Congressional directive of HOLA:

> [I]nstead of being subject to a hodgepodge of conflicting and overlapping state lending requirements, federal thrifts are free to originate loans under a single set of uniform federal laws and regulations. This furthers both the "best practices" and safety and soundness objectives of the HOLA by enabling federal thrifts to deliver low-cost credit to the public free from undue regulatory duplication and burden. At the same time, the interests of borrowers are protected by the elaborate network of federal borrower-protection statutes applicable to federal thrifts.

61 Fed. Reg. 50951-01, 50965 (Sept. 30, 1996).

Courts have recognized the breadth of OTS's exclusive authority to regulate the lending activities of federal savings associations. As the Supreme Court has observed, OTS acted on Congress's grant of authority to preempt all state laws affecting the loan operations of federal savings associations and regulated "comprehensively the operation of these [federal savings] associations, including their lending practices …." *Fidelity Fed.,* 458 U.S. at 167.  Although the First Circuit has not yet ruled on this point, numerous other courts of appeal have held that 12 C.F.R. §560.2 preempts a wide variety of state laws purporting to regulate federal savings banks.

*Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001, 1004 (9th Cir.2008) (California law purporting to require federal savings association to refund mortgage "lock-in-fees" to consumers was preempted); *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 182-84 (2nd Cir. 2005) (12 C.F.R. §560.2 preempted New York statute purporting to require the payment of interest on mortgage escrow accounts); *Casey v. F.D.I.C.*, 583 F.3d 586, 596 (8th Cir. 2009) (Missouri statutory and common law prohibiting the unauthorized practice of law and Missouri Merchandising Practices Act preempted); *State Farm Bank v. Reardon*, 539 F.3d 336, 344 (6th Cir. 2008) (licensing and registration requirements set forth in the Ohio Mortgage Broker Act preempted).

**II.    Plaintiff's claims are preempted under the rubric established by OTS for analyzing state law claims under HOLA and its implementing regulations.**

All of Plaintiff's state law claims are preempted under the analysis established by OTS for determining whether a particular state law claim is preempted.  In its regulation at 12 C.F.R. § 560.2, OTS declares its intent to occupy "the entire field of lending regulation" and its policy of establishing a "uniform federal scheme of regulation."  12 C.F.R. § 560.2(a).  The regulation also provides an illustrative (but not all-encompassing) list of  lending activities which states cannot regulate, and a list of state laws that are not preempted "to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with purposes of" the broad preemption and uniform regulatory policies of subsection (a).  12 C.F.R. § 560.2(b)-(c).  In guidance, OTS has further detailed the methodology for determining whether a state law is preempted by its regulations:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is

preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be construed narrowly. Any doubt should be resolved in favor of preemption.

61 Fed. Reg. at 50966-67.

The OTS made clear when implementing Section 560.2 that it had "consistently taken the position that, with certain narrow exceptions, any state laws that purport to affect the lending operations of federal savings associations are preempted. None of the changes implemented today should be construed as evidencing in any way an intent by OTS to change this long held position: OTS still intends to occupy the field of lending regulation for federal savings associations."  61 Fed. Reg. 50951, 50952 (Sept. 30, 1996).

A federal agency's interpretation of its own regulations is entitled to deference "unless 'plainly erroneous or inconsistent with the regulation.'"  *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (citation omitted). These guidelines further the stated policy of broad preemption in this field and cannot seriously be challenged as "inconsistent" with the regulation.

 Following the OTS's own interpretive guidelines, Plaintiff's claims are preempted at the "first step" because they challenge activities that are specifically listed in subsection (b). *See* 61 Fed. Reg. at 50966-67.  This Court's inquiry can "end there." *Id*.  Even if there were reason to continue beyond that first step, Plaintiff's claims "affect[] lending" and are thus subject to the presumption of preemption in subsection (a), which presumption is not reversed because plaintiff cannot "clearly . . . show[ ]" that the claims fall within the scope of subsection (c). *See Id*.

1.     **Plaintiff's claims are preempted because they challenge activities  listed in subsection (b)**

As noted above, Section 560.2(b) provides "illustrative examples" of "the types of state laws preempted by [§ 560.2(a)]."  These examples include four categories that cover all of

Plaintiff's allegations pertaining to the terms of the note and mortgage at issue and the actions

taken by Eastern in connection with the closing of the loan transaction. Subsection (b) lists "the

types of state laws preempted by paragraph (a) of this section" which "include, without

limitation, state laws purporting to impose requirements regarding:"

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;

> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;

> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.

All of Plaintiff's claims, both statutory and common law, are preempted under 12 C.F.R.

§ 560.2(b) as they are wholly based on listed activities.

### a.    Claims under state lending statutes  are preempted.

Recent cases make clear that claims based on violations of state lending statutes are

covered by one or more of the categories[3] listed in Section 560.2(b) and are therefore preempted.

*See Simon v. Bank of America, N.A.*, 2010 WL 2609436, *5-6 (D.Nev. 2010) (preemption of

Nevada statute prohibiting  lenders from making mortgage loans without determining  that the

borrower has the ability to repay the home loan; to the extent statute requires additional

disclosures from national banks, its application to national banks is preempted ); *Ibarra v. Loan*

---

[3] The same principles of preemption apply to national banks under regulations issued by the Office of the Comptroller of the Currency which are virtually identical to the OTS regulations. 12 C.F.R. §34.4.

*City*, 2010 WL 415284, *6 (S.D.Cal. 2010) (preemption of cause of action for violation of

California predatory lending laws); *Gomez v. Wachovia Mortg. Corp.*, 2010 WL 291817, *2-3

(N.D.Cal. 2010) (preemption of claimed violation of California predatory lending statute based

on failure to disclose that loan included a yield spread premium); *Acosta v. Wells Fargo Bank,

N.A.*, 2010 WL 2077209, *6 (N.D.Cal. 2010) (preemption of California statute placing

restrictions on adjustable rate mortgages and requiring that the lender make certain disclosures at

the time the borrower requests an application); *Garcia v. Wachovia Mortg. Corp.*, 676 F.Supp.2d

895, 913 (C.D.Cal. 2009) (preemption of California statutes relating to loan's negative

amortization features and teaser rates, failure to provide adjustable rate mortgage disclosure

notice, failure to downwardly adjust a mortgage rate and notification of changes in interest

rate).

There is no meaningful distinction between the state statutes held to be preempted in

these decisions and the Massachusetts statutes and regulations cited by the Plaintiff here.

### b.   Common law claims based on lending activities are subject to preemption.

Preemption applies equally to Plaintiff's common law claims, such as Count VII (civil

conspiracy) and Count XV (negligent infliction of emotional distress). For example, *Ayala v.

World Savings Bank, FSB*, 616 F.Supp.2d 1007, 1018 (C.D.Cal. 2009), and *Fultz v. World

Savings and Loan Ass'n*, 571 F.Supp.2d 1195, 1198 (W.D.Wash. 2008), hold that claims of

infliction of emotional distress are preempted to the extent they challenge the terms of credit

extended to borrowers or are based on the bank's alleged failure to provide disclosure of the

costs and terms of loans. This is precisely the basis of the claim here. *See* Complaint ¶227(a)

(alleging that Eastern inflicted emotional distress by negotiating, offering, originating and

providing the Gilberts with a "high cost home mortgage loan" that "dramatically increased their

debt with unsustainable and unlawful terms and conditions that the Gilberts could not possibly have ever met."); *see also Jones v. Home Loan Investment, F.S.B.*, 2010 WL 1238437, *7 (S.D.W.Va. 2010) (claim that bank negligently did not qualify plaintiff for loan was preempted; determinations of buyer's ability to afford a loan and their overall qualifications for the loan directly implicate the processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages ); *Bopp v. Wells Fargo Bank, N.A.*, 2010 WL 3768053, *4 (D.D.C. 2010) (claims for breach of  implied covenant of good faith and fair dealing, fraudulent misrepresentation, declaratory judgment and equitable estoppel preempted because "thorough reading of plaintiff's Complaint reveals that he is challenging the terms of his credit, the manner in which his loan was amortized, the quality and quantity of information disclosed to him, and the manner in which his mortgage application loan and origination was processed").

### c.  Plaintiff's claim under G.L. c. 93A is preempted as derivative of other preempted claims and based solely on lending activity.

Numerous courts have held that claims  based on lending activities which allege violation of state laws prohibiting unfair and deceptive trade practices such as G.L. c.93A are preempted by 12 C.F.R. § 560.2 and 12 C.F.R. § 34.4.   *See  Cedeno v. IndyMac Bancorp, Inc.*, 2008 WL 3992304, *9 (S.D.N.Y. 2008) (finding preemption of New York General Business Law § 349 prohibiting deceptive acts or practices where plaintiff relied on state law to regulate a loan-related fee, disclosure of information relating to the fee, and the processing and origination of a mortgage); *Mincey v. World Savings Bank, FSB*, 614 F.Supp.2d 610, 646 (D.S.C. 2008) (finding preemption of claim for violation of South Carolina unfair trade practices act, where the alleged violation  was the failure to make certain disclosures concerning the loans at issue);  *Boursiquot v. Citibank F.S.B.*, 323 F.Supp.2d 350, 356 (D.Conn. 2004) (preemption of claims under Connecticut CUTPA).

Recently, the Ninth Circuit ruled that claims under the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*., were preempted by the National Bank Act and 12 C.F.R. § 34.4. *Martinez v. Wells Fargo Home Mortg., Inc*., 598 F.3d 549, 556-557 (9th Cir. 2010).  In *Martinez*, the plaintiffs claimed that a national bank that charged an underwriting fee violated the UCL  by overcharging underwriting fees and marking up tax service fees, failing to disclose actual costs of its underwriting and tax services, and violating multiple state and federal laws. *Id*. at 554.

The Court held that the unfair competition claim relating to the charging of fees was preempted both by 12 C.F.R. § 34.4 and 12 C.F.R. § 7.4002(b)(2).  *Id*. at 556. The claim of fraudulent practices was preempted by 12 C.F.R. §34.4(a)(9), which preempts state laws concerning  "[d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents."[4]  *Id*. at 557.  With respect to the UCL claim based on violation of various state and federal laws, the Court concluded that "[t]o the extent that any of these state laws address overcharges, mark-ups and disclosure duties, by or of a national bank, they are preempted and cannot serve as predicate violations for the claim of 'unlawful' conduct." *Id*. at 557.

As in *Martinez*, Plaintiff's claim for violation of Chapter 93A (Count V) is premised on Eastern's alleged violations of state lending statutes and in fact is based entirely on lending activity. Complaint ¶197(b)-(d).  For the reasons set forth above, the direct claims of statutory violations are preempted. Under *Martinez,* the Chapter 93A claims which are premised on violations of those same statutes are also preempted.

To the extent that the Chapter 93A claims are premised on alleged violations of  the

---

[4] 12 C.F.R. § 34.4(a)(9) is virtually identical to 12 C.F.R. § 560.2(b)(9).

Attorney General's regulations regarding residential mortgage loans, 940 CMR 8.00, Complaint ¶197(e)), the Complaint fails to specify which of the regulations were allegedly violated. Assuming that the Plaintiff relies on a regulation such as 940 CMR 8.05, which provides in relevant part that "it is an unfair or deceptive act or practice for a mortgage broker or mortgage lender to fail to make any disclosure, or fail to provide any document, to a consumer required by and at the time specified by any applicable state or federal law, regulation or directive," this is preempted to the extent Plaintiff claims that Eastern failed to make disclosures required by state statute.  It should also be noted that the Attorney General's regulations were extensively revised, effective April 4, 2008. 940 CMR 8.08. The revisions added a number of substantive provisions which did not exist at the time the Gilberts entered into the mortgage loan transaction with Eastern in 2006. *See, i.e.*, 940 CMR 8.06(15) (making it an unfair or deceptive practice for a mortgage lender to make a loan unless the lender reasonably believes the borrower will be able to repay the loan). The revised regulations do not apply retroactively.  *See In re Vincent*, 381 B.R. 564, 573, n.12 (Bkrtcy.D.Mass. 2008).

### d.  Plaintiff's statutory claims challenging the foreclosure are preempted.

Count VI alleges that Eastern violated G.L. c. 244, the Massachusetts statute governing the foreclosure of mortgages.  Paragraph 199 makes a number of allegations pertaining to the sale process which allegedly support this claim.  In addition, Count I-V and XIV claim that the foreclosure sale was invalid because Eastern's loan was unenforceable or null and void due to alleged violations of specific lending statutes.  Complaint ¶¶172, 174 and requests for relief contained following ¶¶180, 186, 191, 197 and 225.  These claims are preempted.

Numerous courts have addressed preemption of state statutes in the context of challenged foreclosures.  In *DeLeon v. Wells Fargo Bank, N.A.*, 2010 WL 2382404, *6 (N.D.Cal. 2010), the

court held that a California statute (Civil Code § 2924) requiring lenders to provide certain

written notices to a borrower prior to a foreclosure sale, and to file such notices in the

appropriate county office, was preempted.  Similarly, in *Ayala v. World Savings Bank, FSB*, 616

F.Supp.2d 1007, 1015-1016 (C.D.Cal. 2009), the court dismissed on preemption grounds a claim

for quiet title alleging that the recordation of a deed of trust and a subsequent foreclosure was

wrongful and should be voided due to the alleged unfairness of terms of credit extended to the

plaintiffs and the lenders' allegedly deceptive advertising. As in the instant case, the plaintiffs

claimed that the lender knew that the plaintiffs did not have the income to support the loan and

that the lenders set a "trap" for them, in which they "continue[d] to pay the minimum payments

even though the loan [was] recast monthly which [meant] they [would] be paying on a principle

that is much higher than their original loan once the teaser period comes to an end."

      **2.**      **Plaintiff's claims "affect lending" and do not fall within the**
                      **exceptions to preemption under § 560.2(c).**

As noted above, the Court need not go beyond the first step in the preemption analysis,

because the Plaintiff's claims are based on the types of laws listed in paragraph (b) of § 560.2,

*Silvas v. E\*Trade Mortg. Corp*., 514 F.3d 1001, 1006 -1007 (9th 2008).

Even if the Court continues beyond the "first step" it should still conclude that the claims

here are preempted.  Under OTS's interpretive guidelines, if a law is not preempted under §

560.2(b), "the next question is whether the law affects lending." 61 Fed. Reg. at 50966. If so,

there is a presumption that the law is preempted which may be reversed "only if the law can

clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is

intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption."  *Id*.

at 50966-67.

There is no doubt that Plaintiff seeks to employ state law in a way that "affects lending."

Clearly all of the claims challenging the terms of the note and mortgage and the actions taken by Eastern in connection with the closing of the loan transaction "affect lending." The same is true for the claims challenging the foreclosure.

Plaintiff's claims can survive, then, only if she can carry her burden to show that her claims "clearly" fit within the OTS's exceptions to preemption. To do so she must "clearly" establish that each such claim "has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section[5]". 12 C.F.R. § 560.2(c). Plaintiff cannot meet this burden.

In *Fultz v. World Savings and Loan Ass'n*, 571 F.Supp.2d 1195, 1198 (W.D.Wash.,2008), the Court ruled that state law claims were all preempted under 12 C.F.R. § 560.2(c) because they were based on the bank's alleged failure to provide timely and meaningful disclosure of the costs and terms of their loans. The court noted that "[p]ermitting state common law and statutory causes of action to proceed without regard to, and unlimited by, the existing federal scheme of regulations would undermine the purposes set forth in § 560.2(a)" and concluded that "[p]reemption under § 560.2(c) is therefore appropriate."

In reaching this decision, the Court cited and relied on a 1999 opinion letter issued by OTS, which concluded that California's California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., was preempted under § 560.2(c) to the extent that it was used to impose on federal savings banks requirements related to loan disclosures and fees. The OTS opinion letter noted that using the statute to "set substantive standards for the Associations' lending operations and practices" has more than an incidental effect on a federal thrift's lending operations and is inconsistent with the purposes of § 560.2(a). OTS Legal Opinion at 13-14

---

[5] Paragraph (a) states that "OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation."

(Mar. 10, 1999), available at 1999 WL 413698. In this case, the entire thrust of Plaintiff's statutory and common-law claims is to "set substantive standards for [Eastern's] lending operations and practices."

See *Haehl v. Washington Mut. Bank, F.A.*, 277 F.Supp.2d 933, 942 -943 (S.D.Ind.,2003) (state law tort claims which would regulate fees that a federally-chartered savings association could charge more than incidentally affect lending operations and are contrary to the purposes set forth in § 560.2(a)).

The same result is warranted here. If Plaintiff is allowed to prosecute her claims, the lending operations of Eastern would be more than incidentally affected and the purposes described in 12 CFR § 560.2(a) would be completely undermined.

### 3. **Count VI (violation of G.L. c. 244) fails to state a claim.**

Count VI alleges that the foreclosure sale conducted by Eastern on February 11, 2009 violated G.L. c.244 and was therefore invalid. This claim is based on a series of factual allegations (¶199(a)-(n)) and Exhibits "L" to "P."  For the reasons set forth below, even assuming the truthfulness of the factual allegations, there is no evidence that Eastern violated Chapter 244 or that the sale was invalid.

The first allegation is that Eastern was dilatory and did not act with commercial reasonableness in executing the foreclosure sale, because it took from February 2007 until February 2009 to conduct the sale. Complaint ¶199(a).  But as the Supreme Judicial Court has held, "[t]he duty of reasonable diligence has never been construed to compel a mortgagee at his peril to commence foreclosure proceedings promptly after default. Rather this duty requires effort and attention by the mortgagee to conduct the sale of the property fairly and in good faith through the observance of the procedural requirements of the statutes and the mortgage."

*Seppala & Aho Const. Co., Inc. v. Petersen*, 373 Mass. 316, 326, 367 N.E.2d 613, 619 (1977). Although the complaint alleges that Eastern did not act with "commercial reasonableness," the requirement of commercial reasonableness imposed by the Uniform Commercial Code does not apply to foreclosure of a mortgage on real estate. *Pemstein v. Stimpson*, 36 Mass. App. Ct. 283, 291, 630 N.E.2d 608, 613(1994). It should also be noted that the Gilberts filed a bankruptcy petition in October, 2008 in an effort to delay or avoid foreclosure. Complaint ¶¶1, 131. Eastern was forced to file a motion for relief from the automatic stay in order to foreclose. Complaint ¶134.

The other allegations fail to specify what section of Chapter 244 was allegedly violated, or how the factual allegations amount to a statutory violation. As the Appeals Court has held, "[i]f the statutory norms found in G.L. c. 244, §§ 11-17B, governing foreclosure of real estate mortgages, have been adhered to, Massachusetts cases have generally regarded that as satisfying the fiduciary duty of a mortgagee to deal fairly with the mortgaged property, unless the mortgagee's conduct manifested fraud, bad faith, or the absence of reasonable diligence in the foreclosure sale process." *Id.*, 36 Mass. App. at 286. Reasonable diligence "inquires whether the sale has been advertised at least as required by statute, whether the proceedings have been open, and whether notice of foreclosure sale has been given to obviously interested parties, especially those who have manifested interest." *Id.,* 36 Mass. App. at 291. In order to invalidate a foreclosure sale, the failure of diligence must be "of an active and conspicuous character." *Id.*, 36 Mass. App. at 287.

The complaint fails to allege that Eastern failed to advertise the sale as required by statute (*see* G.L. c.244, § 14), nor does it claim that the proceedings were not open or that notice was not given to "obviously interested parties."

The complaint claims that the advertisement of the foreclosure sale was defective, in that the metes and bounds description of the property was not accurate. Complaint ¶199(b). However, it provides no support for this conclusory allegation. In any event the advertised notice of sale (attached to the Bowling affidavit, which is Ex. "N" to the Complaint) plainly identifies the property to be sold as the property known and numbered 12 Austin Farm Drive in Nantucket, as shown on a plan recorded at the Nantucket Registry of Deeds, including a title reference to the deed. The Plaintiff cannot seriously claim that any alleged error in the metes and bounds description invalidates the sale or caused injury to the Gilberts.

The complaint alleges that the "memorandum of sale" refers to 11 Austin Farm Drive, rather than 12 Austin Farm Drive. Complaint ¶199(c) and Exhibit "L." However, Chapter 244 does not require the preparation or use of a "memorandum of sale" and the Plaintiff cannot claim that a typographical error in the memorandum, which was executed after the sale to memorialize the high bid, invalidates the sale itself. There is no dispute that the foreclosure deed conveying the property to Bethpage correctly refers to the property located at 12 Austin Farm Drive, Nantucket. Complaint, Exhibit "O."

The complaint protests that the affidavit of Jerry Bowling of Eastern, which was recorded at the registry of deeds after the sale, was unsworn and therefore does not comply with the requirements of G.L. c.244, § 15. Complaint ¶199(d) and Exhibit "N." The affidavit is not unsworn. It plainly states in the first sentence that the affiant "make[s] oath and say[s]." Even if the affidavit were unsworn, it would not invalidate the sale. Filing an affidavit of sale is not a prerequisite for the validity of a sale. *Learned v. Foster*, 117 Mass. 365, 371 (1875). The statutory provision (c.244, § 15) is only "intended to secure the preservation of evidence that the conditions of the power of sale named in the deed have been complied with." *Field v. Gooding*,

106 Mass. 310, 312 (1871).

The complaint alleges that the Bowling affidavit does not indicate that the postponement of the sale from January 28, 2009 to February 11, 2009 was done by public proclamation. This is not true. The affidavit states that "the sale was postponed by public proclamation to January 28, 2009 at 11:00 a.m., upon the mortgaged premises at which time and place upon the mortgaged premises the sale was further postponed to February 11, 2009 at 11:00 a.m…." Ex. "N" to Complaint. Any fair reading of this sentence indicates that the sale was postponed by public proclamation.  In any event, as noted above, the affidavit is not a prerequisite for the validity of a sale. *Learned v. Foster*, 117 Mass. 365, 371 (1875). Massachusetts law may require that a sale be postponed by public proclamation, *Fitzgerald v. The First National Bank of Boston*, 46 Mass.App.Ct. 98, 100 (1999), but it is significant that the complaint does not allege that no public proclamation was made on January 28, 2009.

The complaint claims that Eastern's attorney, Erik Potter, could not conduct the foreclosure sale on February 11, 2009 because the power of attorney authorizing him to enter on the premises and to sign all documents in connection with the sale was dated February 25, 2009. Complaint, ¶199(f) and Exhibit "P."  However the power of attorney plainly states that the effective date of the document was April 14, 2008.  Eastern is unaware of any authority that would make the power of attorney ineffective. The complaint also alleges that Attorney Potter had a conflict of interest, but even if true (which it is not) that would not invalidate the sale.

The complaint claims that Bethpage did not comply with the memorandum of sale by not paying a deposit or the purchase price. Complaint ¶199(h)-(k).  But the Complaint acknowledges that Eastern assigned its bid to Bethpage. Complaint, Exs. "Q" and "R."  As the mortgagee, Eastern was entitled to "credit bid" using some or all of the debt owed by the Gilberts, and it

makes no sense to require Eastern to pay a deposit or to write a check to itself.  *Federal Deposit Ins. Corp. v. Meyer.* 781 F.2d 1260, 1264-1265 (7th Cir. 1986) ("credit bidding" allows foreclosing lender to bid with its mortgage debt rather than requiring lender to bid with cash; foreclosing lender is allowed to credit bid because if lender is the highest bidder and is required to bid with cash, lender would pay itself with the same cash it bid). The use of some of Eastern's debt to bid constitutes consideration.

Finally, the complaint alleges that the signature of Bethpage on the memorandum of sale is invalid because a corporation cannot sign its own name to a legal document. Complaint ¶199(l), Ex. "L."  As noted above, there is no statutory requirement that a memorandum of sale be executed. There is also no question that the property was conveyed by foreclosure deed to Bethpage.  Complaint, Ex. "O."  In addition, the argument that a corporation cannot sign a legal document has no basis in law.

<div align="center">

### Conclusion

</div>

For all of the foregoing reasons, Defendants respectfully request that their motion to dismiss be allowed.

<div style="margin-left:40%;">

Defendants
Eastern Savings Bank, FSB, and Bethpage
Associates, Inc.,
By their attorneys,

/s/ Howard M. Brown
Howard M. Brown, BBO #547948
Krista L. Hawley, BBO #663926
Bartlett Hackett Feinberg P.C.
155 Federal Street, 9th Floor
Boston, MA 02110
Tel. (617) 422-0200
hmb@bostonbusinesslaw.com
klh@bostonbusinesslaw.com

</div>

Dated: October 15, 2010

**CERTIFICATE OF SERVICE**

I hereby certify that  the above document was filed electronically on October 15, 2010 utilizing the court's ECF system. A notice of the filing of the document was sent by the court's ECF system to all counsel of record who are registered users of the court's ECF system, who may then access the document through the court's ECF system. In addition, I certify that a copy of the foregoing document was served by mail on any attorney of record or pro se party who is not  registered to receive electronic filing, as indicated on the Notice of Electronic Filing issued by the court's ECF system.

/s/ Howard M. Brown
Howard M. Brown