UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                      )      Docket No. 10-CV-11491-JLT
CAROLYN R. CHANEY, as           )
CHAPTER 7 TRUSTEE, for         )
JOHN AND ELIZABETH GILBERT,  )
      Plaintiff,                   )
                                        )
v.                                     )
                                        )
EASTERN SAVINGS BANK, FSB,    )
BETHPAGE ASSOCIATES, INC.,     )
PAUL S. JENSEN, and ROBERT J. SMITH, III,  )
      Defendants                )
_____)

## PLAINTIFF'S OPPOSITION TO DEFENDANT PAUL S. JENSEN'S MOTION TO DISMISS COUNT XV OF PLAINTIFF'S COMPLAINT

NOW COMES the Plaintiff Carolyn R. Chaney, as Chapter 7 Trustee for John and Elizabeth Gilbert, by and through her attorney, in the above-entitled action, and hereby respectfully submits her Opposition to Defendant Paul S. Jensen's ("Jensen") Motion to Dismiss Count XV of Plaintiff's Complaint. Plaintiff further states as follows:

## I.    INTRODUCTION:

Defendant Jensen's Motion to Dismiss Plaintiff's Count XV for failure to state a claim pursuant to F.R.C.P. Rule 12(b)(6) is limited to the very narrow issue regarding the "exceptional circumstances" under which a plaintiff may recover in a claim for a negligent infliction of emotional distress claim leveled against an attorney. In his motion, Jensen attempts to limit the "exceptional circumstances" to cases where an

1

attorney's negligence or malpractice resulted in a client's unjustifiable loss of liberty.

See *Wagenmann v. Adams*, 829 F.2d 196  (1st Cir. 1987).

The Plaintiff disputes that the limited view espoused by Jensen is in fact the law of the Commonwealth of Massachusetts.  In fact, no Massachusetts court has ever decided and/or established the exact parameters under which a Plaintiff may seek emotional distress damages against their attorney.  The Plaintiff asserts that an attorney's negligence and/or malpractice that foreseeably results in the attorney's elderly clients inevitably losing their home to foreclosure is an "exceptional circumstance" sufficient to support a claim to recover for emotional distress under the law of the Commonwealth of Massachusetts.  Plaintiff further states that her complaint does in fact state a claim upon which relief can be granted in this regard under a Rule 12(b)(6) analysis.  In the alternative, Plaintiff would request thirty (30) days to file an Amended Complaint to address the contentions that Jensen raises in his motion.

## II.    ADDITIONAL WELL-PLED FACTS:

In addition to the facts set out by the Defendant on pages 2 and 3 of Jensen's Memorandum of Law in Support of his Motion to Dismiss which Plaintiff incorporates by reference (see "Plaintiff's Factual Allegations"), the Plaintiff adds the following:

The Gilberts are in their 70's and have lived on Nantucket since 1957. (Complaint at para. 7) They have been married for 54 years. (Complaint at para. 13.) As of the time of the filing of the Plaintiff's complaint, the Gilberts had already been foreclosed on by Eastern and an Eastern subsidiary, Defendant Beth Page Associates, Inc. ("Beth Page") was (and is) prosecuting an eviction of the Gilberts from their home in the Nantucket District Court. (Complaint at para. 157-160.)  At the time the Gilberts

filled out the Eastern Savings Bank ("Eastern") loan application for the mortgage that forms the basis of this action, the Gilberts monthly income was $4,360.01. (Complaint at para. 101.) Jensen has not disputed this. On their loan application, the Gilberts listed no liquid assets of any kind, including no bank accounts, annuities, stocks or bonds or retirement accounts or any other liquid assets listed. (Complaint at para. 92-93.) Jensen has not disputed this. Despite Eastern's actual knowledge of the Gilberts' distressed financial circumstances (the loan application states that the purpose of the loan was a "foreclosure buyout"), Eastern committed to loan the Gilberts $1,300,000.00. (Complaint at para. 98)   Jensen has not denied that he was aware of the Gilberts' distressed financial condition and in fact must have known it since he in fact represented them in the transaction. (Complaint at para. 107) The Eastern loan included closing costs of $101,000.00 and "cash out" of more than $99,000.00. (Complaint at para. 98-100.) The mortgage loan offered by Eastern included an adjustable interest rate with an initial rate of 13.99%. (Compliant at para. 101) It required monthly payments of more than $17,000.00. (See Complaint at para. 101.) In their complaint Plaintiff alleges that the Eastern loan itself – pursuant to the terms thereof - was illegal under Massachusetts law under various statutes at the time it was entered into. (Complaint Counts I-V). This is something that Jensen, as an attorney licensed in Massachusetts and experienced in real etstae transactions knew or should have known.   Nowhere does Jensen aver that he investigated whether the Eastern loan complied with state law regarding high cost mortgages or provided any advice as to the legality of the loan to the Gilberts. Acting upon the advice and counsel of Attorney Jensen the Gilberts executed the mortgage loan documents prepared and provided by Eastern and purportedly reviewed by Jensen.

3

(Complaint at para. 117.)  Jensen had also represented the Gilberts on various matters prior to the refinancing of Gilberts' mortgage loan in August 2006 (Complaint at para. 104.)

**III.    ARGUMENT:**

A.    Standard of Review:

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.2d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face.  *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555, 127 S.Ct. 1955 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, ---U.S.---, 129 S.Ct. 1937, 1949, 173 L.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct 1955).  Stated another way, plaintiff's well-pleaded facts should "possess enough heft 'to show that the pleader is entitled to relief.'"  *Id.* at 545.

With respect to cases that are before the court on diversity grounds, the court shall apply the substantive law of the forum state, i.e., the law of the Commonwealth of Massachusetts.  *See, Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 10 (1st Cir. 2000); *see, Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5.

B.      In Massachusetts, a Plaintiff may recover in a legal malpractice claim all reasonably foreseeable damages, including emotional distress damages.

It is well-settled in Massachusetts that "[a]n attorney who [commits malpractice] is liable to his client for any reasonably foreseeable loss caused by his negligence." *Fishman v. Brooks*, 396 Mass. 643, 646 (1986).  Most often, the reasonably foreseeable loss arising from attorney malpractice tend to be economic in nature.  *Wagenmann v. Adams*, 829 F.2d 196  (1st Cir. 1987); *Wehringer v. Powers & Hall, P.C.*, 874 F.Supp. 425 (D.Mass. 1995).

With respect to the recovery of emotional distress damages in these types of cases, there are no reported Massachusetts decisions that confront this issue directly. The First Circuit in *Wagenmann v. Adams, supra,* did, however, analyze the issue of emotional distress visited upon a client by the actions of their attorney.  In *Wagenmann,* an attorney's misconduct and negligence resulted in his client being involuntarily committed to a mental hospital.   A jury found for the client and the lawyer appealed. On appeal the lawyer argued that the Plaintiff was not entitled to be awarded damages for emotional distress.  *Id.* at 221.  This is the same argument that Jensen makes in the instant case.  In *Wagenmann*, the lawyer argued that any recovery must be limited to economic losses. *Id.*

The First Circuit ruled in *Wagenmann* that "the stark reality of civil commitment must . . . be synchronized with . . . *Fishman v. Brooks*, 396 Mass. at 646." *Id.* at 222. The Court thereafter concluded:

> [T]here is little room to doubt that the harm Wagenmann suffered due to [his attorney's] bungling was real and significant, and that the injury was reasonably foreseeable under the circumstances.  Any attorney in Healy's

position should readily have anticipated the agonies attendant upon involuntary (and inappropriate) commitment to WSH and the subsequent stigma and fear associated with such a traumatic episode.  The damages were therefore recoverable under Massachusetts law.

The Court then went on to say:

"Were we to accept the notion that a client's recovery on the grim facts of a case such as this must be limited to purely economic loss, we would be doubly wrong.  The negligent lawyer would receive the benefit of an enormous windfall, and the victimized client would be left without fair recourse in the face of ghastly wrongdoing.  Despite having caused his client a substantial loss of liberty and exposed him to a consequent parade of horribles, counsel would effectively be immunized from liability because of the fortuity of the marketplace. . . . We are not required by the law of the commonwealth, as we read it, to reach such an unjust result." *Id.*

The fact that *Wagenmann* addresses an involuntary commitment to a mental hospital as one "exceptional circumstance" where emotional distress damages are reasonably foreseeable sufficient to support a jury verdict against an attorney and his misconduct does not mean that such is only "exceptional circumstance" upon which such damages may be awarded.  One can clearly see that there may be a wide range of other "exceptional circumstances" that warrant an imposition of damages for emotional distress as against an attorney where his conduct is alleged to have caused such distress to his client(s).

      C.    <u>The Completely Foreseeable Loss of a Client's Home to Foreclosure and the 'Consequent Parade of Horribles' Attendant Thereto Gives Rise to "Exceptional Circumstance(s)" Where Emotional Distress Damages Are Reasonably Foreseeable and Compensable to Plaintiff as Against Attorney Jensen.</u>

As stated above, no Massachusetts court has addressed the exact parameters as to the nature and extent of the "exceptional circumstances" needed to prove an emotional distress claim in a legal malpractice matter.  It is an undecided and unresolved issue in this state.

The only Massachusetts ruling that Defendant Jensen attempts to rely on in his motion is a Massachusetts Superior Court case entitled *Iacono v. Boncore*, 2003 WL 22285514. This ruling however was unpublished and unreported. In *Iacono*, Justice Sanders, in his "Memorandum of Decision on Defendants' Motion in Limine" writes:

> "*Generally*, the only foreseeable impact on the plaintiff from an attorney's wrongdoing is an economic loss. *Wehringer v. Powers & Hall*, 874 F.Supp. 425, 429 (D. Mass. 1995). Only in exceptional circumstances (like a client's loss of liberty) will emotional distress damages have a sufficient causal connection to attorney malpractice so as to be an element of a plaintiff's recovery." Emphasis supplied.

In a typical attorney negligence or malpractice case against an attorney, foreseeable damages might well be only economic. And those damages have been requested in Plaintiff's claims against Attorney Jensen (Count XIII). There are clearly circumstances, however, beyond purely "economic" damages (or "loss of liberty" cases; i.e. *Wagenmann*) where emotional distress damages have a sufficient causal connection to an attorney's negligence or malpractice so as to be an element of a Plaintiff's recovery. The Plaintiff argues that the facts set out in her Complaint gives rise to such a set of circumstances.

The Plaintiff has contended that Jensen, as a licensed attorney in the Commonwealth of Massachusetts who had represented the Gilberts on matters before, knew or should have known that the inevitable consequence of the Gilberts' execution of the Eastern loan at the closing on August 3, 2006 would be the loss of their home through foreclosure. It was not only foreseeable, but based simply on the paperwork being presented, it was certain. As an experienced real estate attorney, Jensen would be well aware of the "consequent parade of horribles" associated with foreclosure. These would include, but not be limited to,

the social stigma of his clients losing their home, his clients being rendered homeless in the senior years of their life, and the fear, anxiety and stress that it would clearly cause his clients throughout the foreclosure and post-foreclosure process. It is not credible to suggest that an experienced real estate attorney would be oblivious to the emotional trauma that would be visited upon his clients under the facts alleged by the Plaintiff (including but not limited to the already severe health problems being suffered by John Gilbert). The emotional impact, particularly upon an elderly couple such as the Gilberts, is inestimable, outrageous and undeniable.

Where Eastern had provided Jensen in advance with the stated monthly mortgage payment amount of approximately $17,000.00 and yet Jensen knew that the Gilberts' monthly income was less than a quarter of that amount, namely, $4,360.01 (based almost entirely on the Gilberts' Social Security payments), Jensen cannot reasonably argue that he could not have foreseen that the Gilberts would immediately be foreclosed upon by Eastern. Indeed one wonders what he was thinking at all. He knew that he was representing them on a "foreclosure refinance". He knew or should have known that his advice and counsel to the Gilberts – whom he had represented before - would be relied upon. The foreclosure proceedings and their aftermath – which to this point has been ongoing and continuous - was directly caused by Jensen's negligence and misconduct in connection with his closing of the (allegedly unlawful) Eastern loan while representing the Gilberts. Plaintiff's claim(s) as to Jensen's legal malpractice includes: a) his dual representation of Eastern and the Gilberts without proper disclosure as required by the Professional Rules of Conduct; b) his failure to do any investigation into applicable state

8

law relative to high cost mortgage loans (including refinances) and to properly advise the Gilberts of the "high cost" and predatory nature of the Eastern loan; and c) in his proceeding with the closing despite the foregone reality that the Gilberts' home would certainly be foreclosed upon almost as soon as the ink was dry on the papers he advised them to sign.

The recitation of factual allegations, all of which have been set out in Plaintiff's complaint, requires the rejection of Jensen's assertion that the Plaintiff has "failed to allege any exceptional facts". The "exceptional facts" of this case are the obvious and well-documented emotional trauma that is visited upon those unfortunate borrowers suffering through the foreclosure process in record numbers in this country. When considered in conjunction with the facts of this case including the Gilberts' age, the specific knowledge that Jensen had (the incredible inequity in their income to debt ratio that the Gilberts were signing themselves up for) or should have known (the terms of the Eastern loan violated Massachusetts law), and this court must find that the Plaintiff has set out a claim for negligent emotional distress against the Attorney Paul S. Jensen sufficient for the court to deny his Motion to Dismiss Count XV of Plaintiff's Complaint and to allow the Plaintiff to proceed to discovery.

## IV.    CONCLUSION:

In support of her opposition, the Chapter 7 Trustee Plaintiff states that the well-plead facts of her complaint and including those contained in Plaintiff's Count XV "possess enough heft" to state a claim that "is plausible on is face" for negligent infliction of emotional distress over and against Defendant Jenson based on the facts of this case and allegations regarding his conduct as the transactional attorney whose

malpractice and negligence directly resulted in the Gilberts losing their home to foreclosure. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 556, 570 (2007).

   In the alternative, the Plaintiff requests thirty (30) days to file an Amended Complaint that would set out more clearly the "exceptional facts" of this case that would show that Defendant Jensen's malpractice and negligence led directly to the loss of their home to foreclosure and the severe emotional distress that occurred therefrom including affidavits from John and Elizabeth Gilberts' treating physicians (the day that Defendant Jensen filed his motion to dismiss, Elizabeth Gilbert suffered a heart attack).

   WHEREFORE, the Plaintiff prays that Defendant Paul S. Jensen's Motion to Dismiss Count XV of Plaintiff's Complaint be denied, and/or in the alternative, that Plaintiff be granted leave to file an Amended Complaint within (30) days of any order of this court.

DATED:   December 14, 2010   Plaintiff Carolyn R. Chaney, as
        Nantucket, MA     Chapter 7 Trustee,
                  by her attorney,

                  /s/ Jamie Ranney, Esq.

                  _____
                  Jamie Ranney, Esq.  BBO#643379
                  Jamie Ranney, PC
                  4 Thirty Acres Lane
                  Nantucket, MA 02554
                  508-228-9224 (tel)
                  508-228-4752 (fax)
                  jamie@nantucketlaw.pro

## CERTIFICATE OF SERVICE

I, Jamie Ranney, do hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) participants and paper copies will be sent via U.S. Mail to those indicated as non-registered participants on the 14th day of December, 2010.

/s/ Jamie Ranney, Esq.

_____

Jamie Ranney, Esq.