UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
CAROLYN R. CHANEY, as CHAPTER 7          )
TRUSTEE,                                 )          Docket No. 10-CV-11491-JLT
                                         )
for JOHN AND ELIZABETH GILBERT,          )
        Plaintiff(s),                    )
                                         )
vs.                                      )
                                         )
EASTERN SAVINGS BANK, FSB, BETH          )
PAGE ASSOCIATES, INC., PAUL S. JENSEN,   )
and ROBERT J. SMITH, III,                )
        Defendants                       )
_____)

### PLAINTIFF'S OPPOSITION TO DEFENDANT EASTERN SAVINGS BANK, FSB AND BETH PAGE ASSOCIATES, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

NOW COMES Plaintiff, Carolyn R. Chaney, as the Chapter 7 Trustee in the bankruptcy

case entitled "In Re John and Elizabeth Gilbert" ("the Trustee" or "Trustee" or

"Plaintiff"), which is filed in the United States Bankruptcy Court for the Middle District

of Florida (Tampa) Docket No. 09-16933 CED, and on behalf of John and Elizabeth

Gilbert, (when reference is made to the Gilberts alone, "the Gilberts"), submits her

Opposition to Defendant Eastern Savings Bank, FSB and Beth Page Associates, Inc.'s

("Defendants")  Motion to Dismiss.  Plaintiff further states the following:

## I.      STANDARD OF REVIEW

Defendants bring their Motion to Dismiss purportedly pursuant to F.R.C.P. Rule

12(b)(6).  Nowhere however in Defendants' Motion do they recite the standard of review

for their motion.  The standard is as follows:  This Court may dismiss Plaintiff's claim(s)

under Fed.R.Cvi.P. 12(b)(6) for "failure to state a claim only if it clearly appears,

according to the facts alleged, that the plaintiff cannot recover on any viable theory."
*Correa-Martínez v. Arrillaga-Beléndez*, 903 F.2d 49, 52 (1st Cir. 1990). To overcome a
motion to dismiss therefore, Plaintiff's complaint may not rely on "labels and
conclusions, and a formulaic recitation of the elements of a cause of action will not do."
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); see also *Ashcroft v. Iqbal*, 129 S.
Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice."). Defendants argue that *all* of
Plaintiff's claims are preempted – not based on a failure to allege sufficient fact in
support of her claims (which Defendants make only cursory objection(s) to an then only
in the context of Plaintiff's M.G.L. c. 244 claims) - but based on federal law (and
regulation(s)) because Defendant Eastern Savings Bank, FSB ("Eastern") is allegedly a
federally-chartered savings bank. Eastern further states that Defendant Beth Page
Associates, Inc., ("Beth Page") is an "operating subsidiary" of Eastern, and thus, like
Eastern is allegedly shielded from Plaintiff's state law claims.

## II.   ARGUMENT

> 1.) <u>Eastern has provided no evidence to this Court that they are a federally-
> chartered savings bank.</u>

No affidavits of anyone with knowledge have been filed with Defendants' Motion
that would tend to show that Eastern is a federally-chartered bank entitled to any right of
federal preemption. There has been no proof of a federal charter proffered. Eastern (and
their "operating subsidiary" Beth Page) provide no evidentiary support for this
contention. See *In re Mortgage Electronic Registration Systems Litigation*, MDL Docket
No. 09-2119-JAT (Ariz. 9-30-2010)  fn 5 ("GE Money Bank provides no evidence (i.e.,
through a request for judicial notice) beyond mere assertion that it is a thrift or savings

association that would be governed by HOLA[1] and protected by the OTS regulations on preemption."). Regardless, Plaintiff will assume that the Eastern (and its "operating subsidiary") are subject to federal laws and regulations regarding federally-chartered banks.

2.) <u>Defendants do not dispute that the Eastern loan violates Massachusetts state law with respect to the statutory or common law claims raised by Plaintiff in Counts I-VII and XV of her complaint.</u>

Nowhere in their motion do Defendants dispute that that the terms of Eastern loan that forms the basis of Plaintiff's claim(s) violates the Massachusetts statutes (other than cursory objections to Plaintiff's claims under M.G.L. c. 244) cited by Plaintiff in her complaint. Likewise, Defendants do not dispute that Plaintiff has made out a prima facie case for the violations of state law detailed in her complaint sufficient to defeat Defendants' Motion to Dismiss. Defendants' sole argument is that Plaintiff's Counts I-VII and XV must be dismissed because, they argue, federal banking regulations preempt Plaintiff's state law claims.

3.) <u>Defendants' argument(s) that the Plaintiff's state law claims are preempted by federal law and regulation are without merit.</u>

A.     Massachusetts "opted out" of the federal Depository Institutions Deregulation and Monetary Control Act ("DIDMCA") and thus the Massachusetts Predatory Home Loans Practices Act and the Borrower's Interest statute at M.G.L. c. 183C and M.G.L. c. 183, s. 28C (Plaintiff's Counts I and II) are not preempted by federal law.

In their motion, Defendants cite 12 CFR 560.2(a) for the proposition that all of Plaintiff's state law claims are preempted in the instant matter. This is erroneous for readily discoverable and obvious reasons. 12 CFR 560.2(a) is not the last word on laws regulating the terms and conditions of mortgages in Massachusetts for federally-chartered

---

[1] HOLA is the federal "Home Owners Loan Act" at 12 U.S.C. s. 1461, *et seq*., which Defendants argue governs the Eastern transaction.

banks – particularly "high cost" mortgages such as the Eastern loan in the instant case -

for the simple reason that Massachusetts "opted out" of certain federal laws purporting to

regulate the lending fields upon which Plaintiff bases her claims.  This is probably why

Defendants in the twenty (20) pages of their motion fail to cite a single case (either state

or federal) applying the doctrine of federal preemption to high cost home loans in

Massachusetts.

      For a recent case involving a federally chartered bank's attempt to avoid liability

under Massachusetts law by citing federal preemption (including an attempt to avoid

liability under Massachusetts' Predatory Home Loans Practices act at M.G.L. c. 183C),

see *Commonwealth v. H&R Block, Inc.*, No. 08-2474-BLS 1 (Mass. Super. Ct., Suffolk

Cty. Nov. 10, 2008), *aff'd, Commonwealth v. Option One Mortg. Co.*, 916 N.E.2d 422

(Mass. App. Ct. 2008).  The Court in *H&R Block* stated:

> "Under the federal Depository Institutions Deregulation and
> Monetary Control Act ("DIDMCA"), '[t]he provisions of the
> constitution or the laws of any State expressly limiting the rate or
> amount of interest, discount points, finance charges, or other
> charges which may be charged . . . shall not apply to any loan [or]
> mortgage, . . . which is secured by a first lien on residential real
> property . . . made after March 31, 1980 . . .' 12 U.S.C. s. 1735f-
> 7a(a)(1).  DIDMCA was enacted by Congress early in 1980, when
> interest rates were at historic highs in the last year of the Carter
> Administration, in order to alleviate the mortgage credit crunch
> caused by state usury laws that were below the market rate of
> interest.  See Senate Report No. 96-368 (Oct. 15, 1979).
> DIDMCA, however, expressly permitted states to opt out of
> DIDMCA by passing a statute 'which states explicitly and by its
> terms that such State does not want the provisions of subsection
> (a)(1) of this section to apply with respect to loans [and] mortgages
> . . . made in such State.' 12 U.S.C. s. 1735f-7a(b)(2)."  p. 97-98.

The *H&R Block* Court went on to say:

> " . . .the Massachusetts Legislature exercised its authority under
> DIDMCA to opt out, enacting a statute that reads in pertinent part,

> `The Commonwealth of Massachusetts hereby declares and
> explicitly states by the terms of this act that it does not want any of
> the provisions of [12 U.S.C. s. 1735f-7a(a)(1)] to apply with
> respect to loans, mortgages, credit sales and advances made in this
> commonwealth . . ." 1981 Mass. Acts, c. 231.  Consequently, the
> provisions of 12 U.S.C. s. 1735f-7a(a)(1) do not apply in this
> Commonwealth.'"  p. 98.

12 CFR 560.2(b)(12) makes specific reference to 12 U.S.C. s. 1735f-7a as being

part of the "field" of bank-related actions specifically preempted by OTS regulations.  As

stated in the *H&R Block* decision however, this area was specifically reserved for

regulation by Massachusetts when it opted out of DIDMCA.

It follows that it is the requirements of M.G.L. c. 183C that governs "high cost

home loans" in Massachusetts by and through its implementing regulations at 209 CMR

40.00 (mistakenly referred to in Count I of Plaintiff's complaint as *209 CMR 32.00*)

irrespective of Eastern's purported status as a "federal savings bank".[2]  The "high cost

home loans" defined in M.G.L. c. 183C and 209 CMR 40.00 relate specifically to

regulatory areas for federally-chartered banks that perhaps *might have* been preempted

under DIDMCA (including 12 U.S.C. s. 1735f-7a).[3]  See 209 CMR 40.05, 40.06, 40.07.

But Massachusetts opted out.  High cost home loans in Massachusetts are therefore not

subject to federal preemption.[4]

---

[2] 209 CMR 40.01(3) states: "209 CMR 40.00 applies to any bank, any Massachusetts or out-of-state branch, any
association or corporation chartered and authorized to do a banking business by a state of the United States other than
the Commonwealth, by the District of Columbia, the Commonwealth of Puerto Rico, any territory or possession of the
United States or by a country other than the United States, or a national banking association, federal savings and loan
association, federal savings bank or federal credit union, which has its main office located in the Commonwealth or in
any other jurisdiction named herein. 209 CMR 40.00 also applies to any lender."
[3] The provisions of M.G.L. c. 183C specifically relate to areas involving residential mortgages secured by first liens
that would purport to regulate variously " . . . the rate or amount of interest, discount points, finance charges, or other
charges which may be charged, taken, received, or reserved . . ." under 12 U.S.C. s. 1735f-7a(a)(1).
[4]  A  "High Cost Home Loan" is defined in 209 CMR 40.02 as:
> "(a) a consumer credit transaction that is secured by the consumer's principal dwelling,
> and in which either:
>  1. a. The annual percentage rate at consummation will exceed by more than eight
> percentage points for first-lien loans, or by more than nine percentage points for
> subordinate-lien loans, the yield on Treasury securities having comparable periods of

The Massachusetts Borrower's Interest statute at M.G.L. c. 183, s. 28C

(Plaintiff's Count II) is likewise not preempted by federal law.  The Massachusetts

Borrower's Interest statute is based squarely on provisions found in the federal Truth in

Lending Act ("TILA") at 15 U.S.C. 1601, *et seq.*[5]  In addition to opting out of DIDMCA

with respect to the regulation of interest rates points, fees, etc., Massachusetts also opted

out of the portions of the TILA that incorporated "borrower's interest" (and other)

language.  See Paragraph B below.  Accordingly the requirement, under Massachusetts

law, that refinance loans such as the one that the Gilbert's were given by Eastern, be in

the "borrower's interest" subject to M.G.L. c. 183, s. 28C, is clearly not preempted by

federal law.  Because Massachusetts opted out of applicable federal regulations related to

Plaintiff's Count I and II, Defendant's Motion to Dismiss such counts must be denied.

B.    Massachusetts "opted out" of the federal Truth-in-Lending Act at 15
U.S.C. 1601, *et seq.*, ("TILA") and therefore banks doing business in Massachusetts are
governed by the provisions of i.) the Predatory Home Loan Practices Act at M.G.L. c.
183 (Plaintiff's Count I) and the regulations promulgated thereto at 209 CMR 40.00, ii.)
the Massachusetts Borrower's Interest at M.G.L. c. 183, s. 28C (Plaintiff's Count II) and
the regulations promulgated thereto at 209 CMR 53.00 as well as iii.) the provisions of
the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA") at M.G.L. c.
140D (Plaintiff's Count III and IV) and the regulations promulgated thereto at 209 CMR
32.00.

As stated previously, many provisions of the federal TILA do not apply to

"credit" transactions in Massachusetts because Massachusetts "opted out" of the TILA.

See *Divittorio v. HSBC Bank USA, N.A.*, (*In re Divittorio*), No. 09-1089, 2009 WL

---

maturity to the loan maturity as of the 15th day of the month immediately preceding the
month in which the application for the extension of credit is received by the lender;
b. When calculating the annual percentage rate for adjustable rate loans, the lender shall
use the interest rate that would be effective once the introductory rate has expired; or
2. Excluding either a conventional prepayment penalty or up to 2 bona fide discount
points, the total points and fees payable by the consumer at or before loan closing will
exceed the greater of 5 per cent of the total loan amount or $400; the $400 figure shall be
adjusted annually by the Commissioner on January 1 by the annual percentage change in
the Consumer Price Index that was reported on the preceding June 1st (As of January 1,
2006, the adjusted figure was $528.)."  See 209 CMR 40.02.
[5] See 15 U.S.C. 1639; incorporation of the federal Homeownership and Equity Protection Act (1994) into TILA.

2246138, *8 n. 66 (Bankr. D. Mass. July 23, 2009) ("The Federal Reserve Board has

exempted credit transactions within Massachusetts subject to the [MCCCDA] from

chapters two and four of TILA. 12 C.F.R. Pt. 226, Supp. I, 12 C.F.R. § 226.29(a) para. 4;

*see Laudani v. Tribecca Lending Corp. (In re Laudani)*, 401 B.R. 9, 25 n. 13 (Bankr.

D.Mass. 2009).  Chapter two of TILA includes sections 1631 through 1646.")[6]   Again,

this is likely why Defendants fail to cite a single state or federal case in their motion that

involves the preemption of Massachusetts law in this area.  The opted out portions of the

TILA include virtually all provisions relative to the "high cost home loan" provisions,

"rescission provisions",  "disclosure" provisions, etc., (and the remedies for violations

thereof) raised by Plaintiff in her complaint and especially under the MCCCDA

(Plaintiff's Counts III and IV).

In the *In re Laudani*  case (Bky.D.Mass. 2009), 401 B.R. 9 cited by *Divittorio*,

the *Laudani* Court addressed the interplay of the TILA and the MCCCDA.  The

Defendant bank had moved for summary judgment on the debtor's TILA claims by

---

[6] "Opted out" provisions of the TILA include:

**CHAPTER 2—CREDIT TRANSACTIONS (codified at 12 U.S.C. 1631 through 1646)**
**Sec.**
121. General requirement of disclosure.
122. Form of disclosure; additional information.
123. Exemption for State-regulated transactions.
124. Effect of subsequent occurrence.
125. Right of rescission as to certain transactions.
126. [Repealed].
127. Open end consumer credit plans.
127A. Disclosure requirements for open end consumer credit plans secured by the consumer's principal dwelling.
128. Consumer credit not under open end credit plans.
129. Requirements for certain mortgages.
130. Civil liability.
131. Liability of assignees.
132. Issuance of credit cards.
133. Liability of holder of credit card.
134. Fraudulent use of credit card.
135. Business credit cards.
136. Dissemination of annual percentage rates.
137. Home equity plans.
138. Reverse mortgages.
139. Certain limitations on liability.

stating that the statute of limitations for bringing TILA claims had expired.  The Court

held that the Plaintiff's MCCCDA claims survived the expiration of any statute of

limitations under TILA because the statutory scheme under MCCCDA and the

regulations therefore at 209 CMR 32.00 exist independently of TILA limitations.

Accordingly, the Defendants' claims of federal preemption of Plaintiff's MCCCDA

claims in the instant case and Defendants' apparent failure to recognize that

Massachusetts opted out of the TILA (and the DIDMCA), are fatal to their Motion to

Dismiss Plaintiff's Count III and IV.  Moreover, even if Massachusetts had not

affirmatively "opted out" of the TILA, nowhere in their motion do Defendants suggest

what provisions of the MCCCDA – the "sister" statute to the TILA - would be preempted

as having more than an "incidental" impact on Eastern's lending operations.[7]

     C.     M.G.L. 93A applies to the acts and practices of Defendants where, as here, the violations of Chapter 93A alleged by Plaintiff (Count V) derive as a *per se* matter of law not only from Defendants' violations of M.G.L. c. 183C, M.G.L. c. 183, s. 28C, and G.L. c. 140D, but also as a result of the general unfair and deceptive nature of Eastern's loan to the Gilberts.

Plaintiff has alleged that a violation of any or all of M.G.L. c. 183C, M.G.L. c.

183, s. 28C or M.G.L. c. 140D are violations of M.G.L. c. 93A.  A violation of M.G.L. c.

183C is a *per se* violation of Chapter 93A.  See M.G.L. c. 183, s. 18(a) and 209 CMR

40.09.  A violation of M.G.L. c. 140D (MCCCDA) is a *per se* violation of Chapter 93A.

See M.G.L. c. 140D, s. 34 and 209 CMR 32.34(2).  Although not specifically stated

within the statute itself or its implementing regulations, Plaintiff alleges that a violation

of the Massachusetts Borrower's Interest statute at M.G.L. c. 183, s. 28C is also a

violation of Chapter 93A because the statute draws its authority directly from the

---

[7] See discussion in Para. D below.  In any case, the TILA also provides that to the extent that state law does not conflict with its provisions, and only to the extent of the specific conflict, state law is applicable to transactions governed by the TILA.  See 15 U.S.C. 1610.

Massachusetts Predatory Loan Practices Act (M.G.L. c. 183C) – the Massachusetts version of HOEPA.[8]  Insofar as the Massachusetts DIDMCA and TILA "opt outs" also encompass the interests covered by the Massachusetts Borrower's Interest statute, a violation of the Borrower's Interest Statute is also a violation of Chapter 93A.

Defendants' claims that the requirements of the Massachusetts Attorney General's regulations at 940 CMR 8.00 are inapplicable because of revisions to those regulations in 2008 are unavailing.  Although the Massachusetts Attorney General's regulations were broadened in 2008 to make more specific conduct related to mortgage lending subject to the requirements of Chapter 93A, Plaintiff's claims are not based solely on the regulations at 940 CMR 8.00.  Plaintiff has alleged conduct in her complaint sufficient – even without applying the Attorney General's regulations to this matter - to invoke the protections of Chapter 93A as against Defendants and to survive Defendants' Motion to Dismiss.

Again, the *H&R Block* case discusses in detail similar arguments that are being made by Defendants in this case in an effort to avoid the net cast by their conduct in originating, servicing and then foreclosing on the Eastern loan.  The *H&R Block* Court stated:

> "The Supreme Judicial Court has made clear that Chapter 93A was intended to be far more than a pale reflection of existing statutory and common-law rights.  As the Court has declared:
>
> > 'Chapter 93A is "a statute of broad impact which creates new substantive rights and provides new

---

[8] Nowhere in Defendants' motion do they reference the existence of the M.G.L. c. 93A demand letter that Plaintiff sent on or about August 31, 2009 and which was attached to Plaintiff's complaint at "Exhibit T".  Defendants' reply – on September 4, 2009 – is attached to Plaintiff's complaint at "Exhibit U".  Although Plaintiff clearly met the prerequisite "demand letter" requirement(s) of M.G.L. c. 93A (even though such demand would not be required for the purposes of finding the *per se* violations of Chapter 93A that Plaintiff cites), Plaintiff's Chapter 93A demand letter also alleged additional unfair and deceptive actions on the part of Eastern that were separate and independent from Plaintiff's state law claims.

procedural devices for the enforcement of those
rights." *Slaney v. Westwood Auto, Inc.*, 366 Mass.
688, 693 (1975).  The relief available under c. 93A
is "sui generis".  It is neither wholly tortious nor
wholly contractual in nature, and is not subject to
the traditional limitations of preexisting causes of
action." *Id.* at 704.  It "mak[es] conduct unlawful
which was not unlawful under the common law or
any prior statute."  *Commonwealth v. DeCotis*, 366
Mass. 234, 244 n. 8 (1974).  Thus, a cause of action
under c. 93A is "not dependent on traditional tort or
contract law concepts for its definition."  *Heller v.
Silverbranch Constr. Corp.*, 376 Mass. 621, 626
(1978).  See *Nei v. Burley*, 388 Mass. 307, 313
(1983) ("[A]nalogies between common law claims
for breach of contract, fraud, or deceit and claims
under c. 93A are inappropriate because c. 93A
dispenses with the need to prove many of the
essential elements of those common law claims")'
*Kattar v. Demoulas*, 433 Mass. 1, 12-13 (2000)

While recognizing that the interpretation of Chapter 93A may be
expansive to accomplish its legislative purpose, the Supreme
Judicial Court has also made clear that the interpretation of
unfairness under Chapter 93A should be limited in its scope. The
Court has set forth three considerations to be used in determining
whether an act or practice is unfair:

> (1) "whether the practice . . . is within at least the
> penumbra of some common-law, statutory, or
> other established concept of unfairness";
>
> (2) whether it "is immoral, unethical, oppressive,
> or unscrupulous"; and
>
> (3) whether it "causes substantial injury" to
> consumers (or competitors or other businessmen).

*Datacomm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760,
778 (1986), quoting *PMP Assocs., Inc. v. Globe Newspaper Co.*,
366 Mass. 593, 596 (1975), quoting 29 Fed.Reg. 8325, 8355
(1964).  See *H&R Block* at p. 94.

Applying this standard and it is apparent that above and beyond the *per se*

violations of Chapter 93A that are present in their statutory claims brought by Plaintiff,

that the origination, servicing and foreclosure of the Eastern loan - along with Plaintiff's

allegations about the Defendants' violation of the Borrower's Interest statute at M.G.L. c.

183, s. 28C - all represent violations of Chapter 93A.  In other words, under settled law in

this Commonwealth, even if all of Plaintiff's state law claims related to M.G.L. c. 183C,

M.G.L. c. 183, s. 28C and M.G.L. c. 140D were to fail, the Plaintiff has alleged sufficient

facts to support the contention that the Eastern loan violates Chapter 93A.  Schubach, et

al. v. Household Finance Corp., 375 Mass. 133 (1978) (Conduct which may be legal still

may violate M.G.L. c. 93A).  Defendants have cited no authority – either state or federal

– which holds that Chapter 93A is preempted by federal law.

    D.   Even if Defendants' claim that OTS regulations govern this transaction were to be found valid at to Plaintiff's state law claims, Defendants have failed to make a showing that Plaintiff's state law claims are automatically preempted.

Defendants' motion fails for the reasons previously cited – namely

Massachusetts' affirmative "opting out" of specific federal statutes regulating the areas in

which Plaintiff has asserted her state claims.  Even however if the doctrine of federal

preemption were applicable to this case, Defendants' bald statement that the Office of

Thrift Supervision ("OTS") has "*expressly preempted the entire field of lending*

*regulations applicable to federal savings associations*" (Defendants' Motion p. 5) is

simply false.  12 CFR 560.2(a), cited by Defendants indeed makes a broad statement of

the "field" of regulations exempt from state law requirements.  However this "field"

preemption is far from complete.  12 CFR 560.2(c) states:

> "*State laws that are not preempted*.  State laws of the following
> types are not preempted to the extent that they only incidentally
> affect the lending operations of Federal savings associations or are
> otherwise consistent with the purposes of paragraph (a) of this
> section: (1) Contract and commercial law; (2) Real property law;
> (3) Homestead laws specified in 12 U.S.C. 1462a(f); (4) Tort law;

(5) Criminal law; and (6) Any other law that OTS, upon review,
finds: (i) Furthers a vital state interest; and (ii) Either has only an
incidental effect on lending operations or is not otherwise contrary
to the purposes expressed in paragraph (a) of this section."
Emphasis supplied.

The plain language of the state-law "exclusion" contained within 12 CFR

560.2(c)(6) makes it clear that where *after OTS review* there is (i.) a vital state interest

that is being furthered *and* (ii.) where the state law has an "incidental" effect on the

bank's lending operations *or* is not contrary to the purposes of 12 CFR 560.2(a), the state

law in question is *not* preempted.  Emphasis supplied.  Defendants fail to cite to any

finding by the OTS that the various Massachusetts statutes cited by Plaintiff in her

complaint are preempted by OTS regulations.  See 12 CFR 560.2(c)(6).   This is despite

the fact that the Massachusetts statutes, the protections of which Plaintiff invokes, were

on the books several years prior to the Eastern loan being made to the Gilberts.

OTS has in fact made a number of determinations that certain state law regarding

high cost loans is preempted.  See the Opinion of OTS P-2003-6 (September 3, 2003;

considering federal preemption relative to the New Mexico Home Loan Protection Act

and its application).  See http://www.ots.treas.gov/_files/56306.pdf.[9]  Accordingly, if

Defendants suspected that they might run afoul of the strictures of state-mandated high

cost lending programs in Massachusetts when they originated the Gilbert's loan, they had

a mechanism for determining whether they would be protected by OTS regulations before

they made a decision to offer the type of high cost home loan that they gave the

Gilberts.[10]   This would be a prerequisite for Defendants' federal preemption claims to be

---

[9] The OTS opinion letter references three (3) previous opinions by the OTS relative to the preemption of state-enacted
high cost home loan acts (Georgia, New York and New Jersey) which were submitted to the OTS for legal review.
[10] G.L. c. 183C was enacted in August 2004; G.L. c. 183, s. 28C was enacted in November 2004, G.L. c. 140D was
enacted in September 1995 and M.G.L. c. 93A was originally enacted in 1968.

considered valid under 12 CFR 560.2(c)(6)(i) and (ii).  Defendants would be hard-pressed to argue that protecting borrowers from the predatory lending practices of banks is not a "vital" state interest.  Indeed, nowhere in their motion do Defendants attempt to argue otherwise.  Further, nowhere in their motion do Defendants argue that the state law claims brought by Plaintiff have more than an "incidental" effect on the bank's lending operations.  Plaintiff obviously has no information about how many high cost home loans like that given to the Gilberts that Eastern has originated. The Defendants provide no facts or information at all on the bank's lending operations – and no discovery has been completed - that would tend to shed light on how the Defendants purport to be impacted – let alone more than "incidentally" - by the Massachusetts statutes Plaintiff has cited in this case.  Without such competent contrary evidence, Plaintiff's claims are entitled to every inference in their favor and thus entitled to survive Defendants' Motion to Dismiss.

The fact that Defendants decided to enter the field of high cost home loans in Massachusetts without reviewing the regulatory landscape in advance does not thereafter allow them to invoke the "safe harbor" of federal preemption once they realize that their loan unequivocally violates Massachusetts state law.  Bald assumptions of the purported protections of federal preemption do not countenance willful blindness on the part of Defendants.  *Alsina-Ortiz v. Laboy*, 400 F.3d 77, 82 (1st Cir. 2005)  ("Willful blindness and deliberate indifference are not mere negligence; these concepts are directed at a form of scienter in which the official culpably ignores or turns away from what is otherwise apparent.") citing *Farmer v. Brennan,* 511 U.S. 825 (1994); *Febus-Rodriguez v. Betancourt-Lebron,* 14 F.3d 87, 92 (1st Cir. 1994).  If this were the case, the logical result would be an incentive for federally chartered banks to actually seek out states where they

could seek the highest cost loans without investigating the regulatory landscape in
advance and without fear of consequences.[11]

  E.  Defendants' argument that Plaintiff's claim under M.G.L. c. 244 (Count VI) is
  preempted by federal law and therefore fails to state a claim is without merit.

     Defendants contend that Count VI of Plaintiff's complaint (violation of M.G.L. c.

244) is preempted by federal law because Plaintiff seeks to invalidate the Defendants'

foreclosure sale by alleging that the Eastern mortgage was void from its inception due to

the violations of the Massachusetts statutes Plaintiff cites in Counts I-V of her complaint.

     M.G.L. c. 244 governs foreclosure procedure in Massachusetts.  Citing

"numerous" cases (two (2) in fact, both from California), Defendants contend that

Plaintiff's claims to invalidate Defendants' foreclosure sale under M.G.L. c. 244 are

preempted by federal law.  Defendants' argument however provides no support for this

contention.

>       "Massachusetts mortgage foreclosures are generally nonjudicial,
>       under a statutory power of sale.  G.L. c. 244, §§ 11-17C.  G.L. c.
>       244, § 14 authorizes a foreclosure sale under a statutory power of
>       sale.   Foreclosure under the statutory power of sale does not
>       require any court approval except for a determination under the
>       Servicemembers Civil Relief Act (50 U.S.C.A. App., §§ 501-596)
>       that the borrower is not currently in military service.  A foreclosure
>       sale under the statutory power of sale may be based on incomplete,
>       backdated, fraudulent, or even forged documentation.   Such
>       practices in Massachusetts are subject to challenge under the
>       Consumer Protection Act, G.L. c. 93A, §§ 2 & 9 and the attorney
>       general's regulations at 940 CMR 3.05 & 3.16.  In addition, "a
>       court acting under general principles of equity jurisprudence has
>       broad power to reform, rescind, or cancel written instruments,
>       including mortgages, on grounds such as fraud, mistake, accident,
>       or illegality." *Beaton v. Land Court,* 367 Mass. 385, 392, 326

---

[11] In support of their preemption argument, Defendants cite a section of the Congressional directive regarding HOLA and language therein which, referring to a "single set of uniform federal laws and regulations" considers HOLA to promote "best practices" by "*enabling federal thrifts to deliver low-cost credit to the public free from undue regulatory duplication and burden*".  Emphasis supplied.  p. 6.  Given the high-cost nature of the terms of the loan given to the Gilberts, it is clear that this Congressional directive regarding incentivizing "low cost" credit lends no support to Defendants preemption arguments in the context of this case or in the high-cost loan area generally.

N.E.2d 302, 308 (1975), *appeal dismissed,* 423 U.S. 806, 96 S.Ct.
16, 46 L.Ed.2d 27 (1975).  See 28 Massachusetts Practice Series:
Real Estate Law with Forms (4th ed. 2004 & Supp. 2009-2010);
William V. Hovey, Michael Pill & Darren Baird; October 22, 2010
at p. 1. Internal citations omitted.

Due to Defendants' federal preemption claims with respect to the foreclosure

process, Plaintiff is forced to argue somewhat inconsistently that her claims under M.G.L.

c. 244 are not preempted for several reasons.  The first is obviously that there is no

federal "foreclosure" statute that Defendants cite to that would purport to supplant

M.G.L. c. 244, s. 14.  The foreclosure process under M.G.L. c. 244 is a creature of

Massachusetts statute and must be followed in Massachusetts to foreclose under the

power of sale in the mortgage – as Eastern purportedly did.  Accordingly, the

Defendants' argument, if followed to its logical conclusion, is that the foreclosure sale

they themselves conducted was void because they purportedly followed Massachusetts

law in the foreclosure process.  Alternatively, their argument appears to suggest that it

would be unlawful for Massachusetts to have a foreclosure statute *at all* when it comes to

federally chartered banks.  This is not the state of the law in Massachusetts.

Plaintiff is claiming that the mortgage itself is void based on Eastern's violations

of Massachusetts state law identified in Plaintiff's Count I-IV meaning that a foreclosure

sale could never have lawfully taken place in any case whether under the Massachusetts

foreclosure statute at M.G.L. c. 244 or otherwise.  Third, the subject mortgage is

identified as a "Massachusetts Mortgage" (see bottom of page 1).  The mortgage also

states (in Para. 16 on p. 11), that the "Governing Law" for the mortgage "shall be

governed by federal law *and the law of the jurisdiction in which the property is located*."

Emphasis supplied.  Since Defendants undisputedly attempted to conduct a "non-

judicial" foreclosure sale exercising the "power of sale" in the Eastern mortgage (and thereafter have argued that they complied with the law in so doing – at least in Nantucket District Court where they filed a Motion for Summary Judgment (denied) in support of this contention), it is hard to understand how Defendants' federal preemption argument(s) have any bearing on Plaintiff's claims under M.G.L. c. 244.   For a discussion as to the nature and extent of the foreclosure process under Massachusetts law and its strict requirements relative to the "power of sale" within the mortgage under M.G.L. c. 244, see *US Bank v. Ibanez*, Mass. Land Court, 08-384283; 08-386755 (October 19, 2009; Long, J.) Memorandum and Order on the Plaintiff's Motion to Vacate Judgment.[12]  See also *Bottomly v. Kabachnick*, 13 Mass. App. Ct. 480 (1982); *McGreevey v. Charlestown Five Cents Savings Bank*, 294 Mass. 480 (1936) and cases cited therein.

Leaving aside that Defendants' preemption claims regarding the foreclosure process fail under Massachusetts law (and the terms of the mortgage contract, even if found to be valid), Defendants misstate the nature and extent of Plaintiff's claims under M.G.L. c. 244.   In support of her contention that Defendants violated the requirements of M.G.L. c. 244, Plaintiff has provided a detailed list of problems associated with the paperwork executed by Defendants during the purported foreclosure process.  Plaintiff's argue that such defects are fatal to the foreclosure process.  In contravention of their own preemption argument, Defendants attempt to deflect and minimize such errors as being irrelevant to the strict requirements of M.G.L. c. 244 since c. 244 does not specifically

---

[12] "A mortgage is a contract.  It is fundamental and basic that a party seeking to exercise a contractual right (here, the power of sale) has the contractual right to do so at the time of its exercise.  As the statute recognizes, these are the mortgagee or his valid assignee, a person specifically authorized by the power of sale, or an attorney, legal guardian or conservator of those persons acting in the name of those persons.  See *McGreevey v. Charlestown Five Cents Savings Bank*, 294 Mass. 480, 484 (1936) ("It is familiar law that one who sells under a power must follow strictly its terms. If he fails to do so there is no valid execution of the power and the sale is wholly void"); see also G.L. c. 183, § 21 ("statutory power of sale" in mortgage, recognizing that person seeking to exercise the power must "first comply[] with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale")."

address the preparation and execution of the paperwork required to conduct a foreclosure sale beyond certain advertising requirements.  Defendants argument, essentially, is that they were not *required* to execute certain documents or to have certain authority for their agents to conduct a proper foreclosure and transfer of title.  This argument fails.   Even if this were true, Defendants *did* execute such documents.   The end result of Defendants' argument is that where they failed to execute their own sale documents properly and without competent authority, they can simply ignore such errors because they sold the property to themselves.  Defendants provide no legal support for such a contention beyond their inapplicable federal preemption argument(s).

A foreclosure sale constitutes a "transfer of title" to the affected realty which requires a wide-variety of legal forms in order to accomplish same.  These would include, but not be limited to a foreclosure deed, certificate(s) of entry, powers of attorney (where, as here, individuals purport to be acting on behalf of corporate entities), consideration, etc.  Accordingly Defendants were required to execute such documents properly in order to claim a valid foreclosure and legal transfer of title.   Thus, a foreclosure process is not legally valid in Massachusetts simply because the foreclosing lender may have complied with the *notice* provisions of M.G.L. c. 244, s. 14.

Defendants have provided their opinion as to the deficiencies in the facts alleged by Plaintiff.  Pursuant to the standard of review under F.R.C.P. Rule 12(b)(6) however, Plaintiff's facts are taken as true.  Defendants have come forward with no evidence to refute such facts other than the representations of their counsel in Defendants' motion.  This is not competent evidence to counter the facts alleged in the Plaintiff's complaint.  No affidavits from anyone with knowledge –other than those which Plaintiff has alleged

are defective – have been offered by Defendants in support of their argument(s).  Finally, even though the significant and indeed, fatal, defects alleged by the Plaintiff all bear on the improper conducting of the foreclosure sale and associated documents therewith, at bottom what Plaintiff claims is that the Eastern mortgage was unlawful *from the beginning* and is therefore void as a matter of law.  Accordingly, a foreclosure sale could not have taken place in accordance with *any* law or *any* procedure since it would be as if the Eastern mortgage never existed at all.  Defendants' motion to dismiss Count VI of Plaintiff's complaint must therefore fail.

F.  Defendants' claim that Plaintiff's common law claims of civil conspiracy (Count VII) and negligent infliction of emotional distress (Count XV) are preempted by federal law are without merit.

For the reasons previously cited – i.e. the fact that Massachusetts has "opted out" of various federal laws relative to high cost home loans, Defendants argument(s) that Plaintiff's common law claims (Counts VII and XV) are "preempted to the extent they challenge the terms of credit extended to borrowers or are based on the bank's alleged failure to provide disclosure of the costs and terms of loans" are completely without merit.  (Defendant's motion p. 10, para. b)  The areas specifically and exclusively referenced by Defendants are precisely the areas that are *not* preempted by federal law in the case of high cost home loans in Massachusetts.  Defendants make no other argument that Plaintiff's common law claims fail to state a claim other than their preemption argument(s).  Defendants' motion to dismiss Counts VII and XV must therefore fail.

## III.  CONCLUSION

Defendants Motion to Dismiss Plaintiff's complaint must be denied in its entirety. Defendants arguments fail – *en toto* - as a result of one (1) plain and readily apparent

fact: Massachusetts opted out of applicable federal law and regulation regarding high cost home loans.  Accordingly, Plaintiff's state law claims – both statutory and common law – are viable, well-pled and Defendants' motion to dismiss, based as it is entirely on federal preemption argument(s), must be denied.

WHEREFORE, the Plaintiffs pray that this Honorable Court:

1.) DENY Defendants' Motion to Dismiss in its entirety;

2.)  AWARD Plaintiff her attorney's fees and costs in having to defend Defendants' Motion;

3.) If the Court is inclined to grant Defendants' Motion, allow Plaintiff thirty (30) days to amend her complaint;

4.) ORDER any such other and further relief as the Court deems meet and just.


DATED:        December 14, 2010              Plaintiffs
              Nantucket, MA                  by their Attorney,

                                             _____
                                             Jamie Ranney, Esq. BBO#643379
                                             Jamie Ranney, PC
                                             4 Thirty Acres Lane
                                             Nantucket, MA 02554
                                             508.228.9224 (tel.)
                                             508.228.4752 (fax)


<u>CERTIFICATE OF SERVICE</u>

I, Jamie Ranney, do hereby certify that the documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) participants and paper copies will be sent via U.S. Mail to those indicated as non-registered participants on the 14th day of December, 2010.


                              /s/ Jamie Ranney, Esq.

_____
Jamie Ranney, Esq.